IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MARK GARCIA, § | |
| § | |
| Plaintiff § | |
| § | CIVIL NO. _____ |
| -v- § | |
| § | JURY DEMAND |
| ORACLE CORPORATION § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Mark Garcia (hereinafter referred to as "Mr. Garcia" or "Plaintiff") in the above-referenced matter, complaining of and about Defendant Oracle Corporation, (hereinafter referred to as "Oracle" or "Defendant"), and for cause of action files this Original Complaint, showing to the Court the following:

### I.   PARTIES

1.   Plaintiff Mark Garcia is an individual who resides in Travis County, Texas.

2.   Defendant Oracle Corporation is an entity doing business within the state of Texas. Defendant that may be served with process by serving its registered Agent, Corporation Service Company d/b/a CSC-Lawyers Inco at 211 E. 7th St. Ste. 620, Austin, TX 78701.

### II.   JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes: Title VII of the Civil Rights Act of 1964 (as amended) (which

is codified in 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)) (hereinafter referred to as "Title VII") and 42 U.S.C. § 1981 (hereinafter referred to as "§ 1981").

4. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's similar state claims that arise under the Texas Commission on Human Rights Act, which is codified in Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. (hereinafter referred to as the "TCHRA"), because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

5. Venue is appropriate because the acts giving rise to this lawsuit occurred within Travis County, Texas, which is within the Austin Division of the Western District of Texas.

### III.     NATURE OF THE ACTION

6. This is an action brought pursuant to Title VII and the TCHRA on the grounds that Plaintiff was discriminated against by Defendant because of Plaintiff's race (Hispanic) and color (brown).

7. Additionally, Plaintiff files this action pursuant to 42 U.S.C. § 1981 to correct and recover the Defendant's unlawful employment practices on the basis of Plaintiff's race.

### IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On July 17, 2018, Plaintiff filed a dual charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and the Texas Workforce Commission-Civil Rights Division (hereinafter referred to as the "TWC") against Defendant for discrimination based on race and color (Charge No. 451-2018-03280).   (See Exhibit 1, which is attached hereto and incorporated by reference).

9. Subsequently, the EEOC issued Plaintiff a Notice of Right Sue, dated March 20, 2019. (See Exhibit 2, which is attached hereto and incorporated by reference). Plaintiff files this lawsuit within ninety (90) days of receiving the Right to Sue notice. Therefore, this lawsuit is timely filed.

## V. FACTS

10. Mr. Garcia (Hispanic, brown) began working for Oracle on February 16, 2018.

11. By the time he had joined the Oracle team Mr. Garcia was a seasoned professional with a depth of knowledge. Indeed, at the time Oracle hired Mr. Garcia he had over thirteen (13) successful years in sales. To say that Mr. Garcia was a highly qualified individual would be an understatement.

12. Mr. Garcia always gave his best efforts for the entire duration of his employment with Oracle.

13. In fact, Mr. Garcia had absolutely no formal disciplinary history at the time of his termination.

14. For the first month of his employment with Oracle, everything went off without a hitch. During this time, he worked closely with his enablement representative Chrisanthy Harris in order to learn the internal processes of Oracle.

15. It was not until Mr. Garcia began to work more closely with Ms. Katie Kriete (Caucasian, white), his direct supervisor, that the situation began to go awry.

16. Mr. Garcia began to notice that Ms. Kriete harbored racial animus towards Hispanics.

17. On March 15, 2018, Ms. Kriete showed her true colors in a one-on-one meeting with Mr. Garcia.

18. Mr. Garcia expressed that he was focusing his sales efforts on all major cities in Texas, including, Dallas, Houston, San Antonio and El Paso. Ms. Kriete immediately snapped instructed Mr. Garcia to "not waste his time on San Antonio or El Paso because they're poor."

19. The fact that Ms. Kriete would single out the only majority Hispanic cities in his plan and characterize them as "poor" shows bias and prejudice.

20. The next time Ms. Kriete would show her racial bias occurred on another one-on-one meeting with Mr. Garcia on April 10, 2018.

21. During that meeting Ms. Kriete once again berated and raise her voice at Mr. Garcia. Ultimately, she spat out at Mr. Garcia "Are you stupid? Everyone else is bringing in deals." Without giving Mr. Garcia an opportunity to defend himself she murmured under her breath, "You're the only brown one I guess."

22. Ms. Kriete's critiques of Mr. Garcia's performance were unfounded because the average time frame for a new employee at Oracle to bring in their first deal is 7 to 8 months.

23. Also, the employees that Ms. Kriete was comparing Mr. Garcia to were not new employees but long-term employees of Oracle. At this point, Mr. Garcia had been with Oracle for only two months.

24. Moreover, Ms. Kriete's statements were outright racists.

25. Walking out of the meeting Mr. Garcia felt lost. He had left a high paying position with Epicor to advance his career with Oracle.

26. Mr. Garcia became concerned about his job security and even developed insomnia as a direct result of Mr. Kriete's treatment. Mr. Garcia felt as if he had no job security from that point forward.

27. Mr. Garcia sought guidance from a life mentor, Federico Gonzales, because he was simply at a loss of how navigate this issue. Should he go to Human Resources and report Mr. Kriete or continue to perform in an effort to move past this racist statement.

28. Mr. Gonzales, who can verify Mr. Garcia's contemporaneous comments, advised that since Mr. Garcia had only been with the company two months, that he should simply try to bring in revenue so that he may transfer to another team.

29. Indeed, Ms. Kriete's attitude made it so Mr. Garcia was afraid to come forward for fear of retaliation.

30. Mr. Garcia continued to work as hard as he could and managed to close his first deal on May 30, 2018, which would net Oracle $27,763.00 in revenue every year.

31. This was about half the time it would take the average new employee to close their first deal.

32. Literally fifteen (15) minutes after processing his first deal, Ms. Kriete terminated Mr. Garcia.

33. Ms. Kriete alleged that Mr. Garcia had always struggled to perform and meet expectations, that he consistently missed meetings, that he tried to pawn off his work on other employees, that he was unable to meet objective requirements in terms of number of in person meetings with customers and number of contacts with potential costumer and that he was unable to perform a BANT analysis, which is a basic qualifying skill that is commonly used in sales organizations.

34. These reasons were not only demonstratively false, but they were downright insulting to an employee of Mr. Garcia's caliber.

35. If Mr. Garcia's performance was truly that bad, why did Ms. Kriete not write him up or discipline him prior to terminating his employment.

36. The fact that Mr. Garcia's disciplinary record is devoid of any write-ups, verbal warnings, or any other form of progressive discipline shows that this reason is unsupported.

37. Furthermore, Mr. Garcia's ability to outperform his peers in all of his prior positions, including at Epicor, shows that this statement is not a true reflection of his work ethic.

38. Moreover, the meetings, that he allegedly missed were what was called "enablement meetings." Mr. Garcia admits to having missed some of the meetings but contends that he was meeting with prospective clients or calling new prospects during those times. It is understood that sales activities take priority over the enablement meetings, and even management admitted that these meetings were optional.

39. Mr. Garcia never tried to pawn off any of his work on his co-workers. The fact that he may have asked his co-workers how to do internal processes is completely normal for a new employee. Ms. Kriete even directed Mr. Garcia to talk to his peers for guidance on internal processes.

40. Mr. Garcia's records within Netsuite, his hotel and car rental bookings as well as his schedule in his Oracle laptop will reflect that he met Ms. Kriete's requirements for in person meetings with customers and number of contacts with potential customers.

41. Lastly, the allegations that Mr. Garcia did not even know how to do a BANT analysis is not only false but also absurd. Mr. Garcia has been using this basic qualifying skill (BANT) for over 13 years. In fact, if he was unable to process leads or qualify opportunities using BANT he would not have been able to keep any of his prior jobs in sales nor would he have been able to bring in his first deal with Oracle in about three months.

42. Now, after his termination, Mr. Garcia has learned that he has been replaced by Christopher Bishop (Caucasian, white).

43. Based upon the above stated facts, it is clear that Mr. Garcia was terminated because of his race and color.

## VI.     COUNT 1 - TITLE VII RACE DISCRIMINATION

44. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

45. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (Hispanic).

46. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's race (Hispanic), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## VII.     COUNT 2 - TCHRA RACE DISCRIMINATION

47. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

48. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (Hispanic).

49. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely

affect Plaintiff's status because of Plaintiff's race (Hispanic), in violation of Texas Labor Code § 21.051 et seq.

## VIII.   COUNT 3 - TITLE VII COLOR DISCRIMINATION

50. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

51. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his color (brown).

52. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's color (brown), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## IX.   COUNT 4 - TCHRA COLOR DISCRIMINATION

53. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

54. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his color (brown).

55. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's status because of Plaintiff's color (brown) in violation of Texas Labor Code § 21.051 et seq.

## X.   COUNT 5-SECTION 1981 RACIAL DISCRIMINATION

56. Plaintiff hereby incorporates by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

57. Pursuant to 42 U.S.C. § 1981, Plaintiff pleads a cause of action against Defendant for racial discrimination.

58. Plaintiff was treated differently than other non-Hispanic employees in terms conditions of his employment. As a result of Defendant's discrimination, Plaintiff suffered damages (in an amount that is within the jurisdictional limits of this Court).

## XI.   JURY DEMAND

59. Plaintiff demands trial by jury.

## XII.   PRAYER

60. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

    a.    All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendments thereto, including but not limited to back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

    b.    Compensatory damages, including, but not limited to, emotional distress;

    c.    Past, present, and future physical pain and mental suffering;

    d.    Punitive damages;

    e.    Liquidated damages;

    f.    Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

g.  Pre-judgment interest at the highest rate permitted by law;

h.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

i.  Costs of Court; and

j.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully submitted,



Alfonso Kennard, Jr.
Texas Bar No. 24036888
SDB No. 71331
alfonso.kennard@kennardlaw.com
2603 Augusta Dr., Ste. 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)

ATTORNEY FOR PLAINTIFF